UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OSCAR TAPIA CARMONA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN MATEO, et al.,<br><br>Defendants. | Case No. 18-CV-05232-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Oscar Tapia Carmona ("Plaintiff") brought suit against Defendants County of San Mateo, Correctional Officer Jesse Ramirez, Correctional Officer Walter Daly, Correctional Officer Derek Hudnall, Correctional Officer James Byrnes,[1] Correctional Officer Ryan Cardoza, Correctional Officer Berta Garcia, Correctional Officer John Ray Guinto, Correctional Officer Daniel Diaz, Correctional Officer David Dominguez, Deputy Samuel Lehr, Deputy Michael Anderson, and Deputy William Robinson (collectively, "Defendants"), alleging claims for excessive force in violation of Plaintiff's constitutional rights, intentional infliction of emotional

---

[1] Plaintiff's Third Amended Complaint refers to Defendant as "Byrns." ECF No. 38, at 1. However, Defendants' motion for summary judgment spells Defendants' last name as "Byrnes." ECF No. 72, at 1.

Case No. 18-CV-05232-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

distress, assault and battery, negligence, and violation of California Civil Code § 52.1 ("Bane Act"). Before the Court is Defendants' motion for summary judgment or, in the alternative, for partial summary judgment. ECF No. 72 ("Mot."). Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

#### 1. Plaintiff's Arrest and Booking into the Maguire Correctional Facility

On March 26, 2018, Plaintiff was arrested on suspicion of committing several violent felonies. *See* ECF No. 72-2 ("Ex. M"). Plaintiff was ultimately charged with multiple counts of attempted murder, assault with a deadly weapon, elder abuse, hit and run, and possession of a firearm by a convicted felon. *Id.*

On the evening of March 26, 2018, Plaintiff was booked into Maguire Correctional Facility ("Maguire"). ECF No. 72-4, at ¶ 2 ("Anderson Decl."). While going through the booking process at Maguire, Plaintiff appeared to be either under the influence of narcotics or having some sort of psychotic episode. *Id.* Plaintiff had rapid speech, transitioned rapidly between English and Spanish, and appeared to be almost manic. *Id.* The only aspect of the booking process that Plaintiff recalls is that he met with a mental health professional. ECF No. 72-7, at 44:6–21 ("Carmona Depo.").

#### 2. Plaintiff's Behavior Deteriorates

On March 27, 2018, Plaintiff told staff at Maguire that he feared for his safety. *Id.* at 45:16–19. Plaintiff was therefore placed in protective custody. Plaintiff does not recall much of that day. *Id.* at 48:22–49:20. On the evening of March 27, 2018, Plaintiff began to display bizarre and disruptive behavior in his cell, including yelling incoherently and banging on his cell door. ECF No. 72-5 at ¶ 3 ("Daly Decl.").

Plaintiff's behavior continued to deteriorate throughout the night. *Id.* Correctional Officer

United States District Court
Northern District of California

Walter Daly ("Daly") recognized that Plaintiff primarily spoke Spanish, and so Daly asked Correctional Officer Jesse Ramirez ("Ramirez"), a bilingual Spanish-English speaker, to speak with Plaintiff and attempt to calm him down. ECF No. 72-7, at 46:21–47:2 ("Ramirez Depo.").

Daly subsequently discovered that Plaintiff had been classified by the Forensic Mental Health staff at Maguire as a moderate suicide risk, which required Plaintiff to be changed into a "Ferguson gown" and moved to an alternative housing unit according to facility policy. ECF No. 72-7, at 22:11–23:22 ("Daly Depo."). A Ferguson gown is designed to prevent inmates from hanging themselves. Ramirez Depo. at 38:17–24.

Accordingly, at some point in the early morning hours of March 28, 2021, officers arrived at Plaintiff's cell and communicated with him in both English and Spanish. Carmona Depo. at 50:5–9. Plaintiff felt paranoid and voices in Plaintiff's head told him that the officers were trying to kill him. *Id.* at 25:3–19; 23:2–9. Daly and Deputy Bill Anderson ("Anderson") recall that Plaintiff was told by officers that he needed to be changed into a Ferguson gown and moved into a new cell. Daly Depo. at 28:14–29:4; Anderson Decl. at ¶ 5. Plaintiff states that he was not told he needed to be changed into a Ferguson gown and was not told why he had to be moved. Carmona Depo. at 52:11–16; 53:25–54:3. Plaintiff refused to exit his cell when Ramirez requested that he come out. *Id.* at 50:5–9; Anderson Decl. at ¶ 5.

### 3. Defendants Enter Plaintiff's Cell

Daly, Ramirez, and Correctional Officer Derek Hudnall (Hudnall") decided that they would enter Plaintiff's cell, handcuff him, remove his clothes, change him into a Ferguson gown, and then move Plaintiff to an appropriate housing unit. Ramirez Depo. at 47:22–48:11; Anderson Decl. at ¶ 4. An Emergency Response Team was not called to assist Daly, Ramirez, and Hudnall because Plaintiff did not appear likely to violently resist. Ramirez Depo. at 45:8–13.

Daly, Ramirez, and Hudnall entered Plaintiff's cell and found him lying on the ground brushing his teeth. Daly Depo. at 35:1–6; 41:5–7; Ramirez Depo. at 49:10–19. Defendant Ramirez estimates that it was 1:30 a.m. when the three officers entered Plaintiff's cell. Ramirez

United States District Court
Northern District of California

Depo. at 52:4–10. Daly took control of Plaintiff's left arm, Ramirez took control of Plaintiff's right arm, and Hudnall took control of Plaintiff's legs. Ramirez Depo. at 50:1–12; Daly Decl. at ¶ 5. The officers then flipped Plaintiff onto his stomach and Daly applied a shoulder pin to Plaintiff's left shoulder. Daly Depo. at 36: 4–16. Daly used the shoulder pin to control Plaintiff's left arm by applying leverage to Plaintiff's left shoulder. Daly Decl. at ¶ 5. Plaintiff attempted to grab Daly's hand and fingers, but otherwise did not resist. *Id.* Ramirez and Daly then handcuffed Plaintiff. Daly Depo. at 41:19–23; Ramirez Depo. at 50:20–23.

Plaintiff testified that the officer that grabbed his left arm broke it during this process. Plaintiff asked the officer to stop twisting his arm because it hurt, but the officer then exerted more force and broke Plaintiff's left arm. Carmona Depo. at 50:14–20. At some point while Ramirez and Daly were in Plaintiff's cell, Ramirez and Daly recognized that Plaintiff appeared to have injured his upper left arm. Daly Depo. at 44:1–21.

Plaintiff also testified that when the officers first entered his cell, the officers began to beat him. Carmona Depo. at 50:14–20. Plaintiff estimates that he was punched more than five times in the stomach and slapped in the face more than ten times. *Id.* at 65:9–17. Leonardo Lopez, an inmate at Maguire, estimates that his cell was 50–60 feet away from Plaintiff's cell. ECF No. 72-7, at 53:19–22 ("Lopez Depo."). Lopez recalls Plaintiff yelling and what sounded like someone being hit in Plaintiff's cell. *Id.* at 70:3–5.

After Plaintiff was handcuffed and placed on his stomach, Deputy Samuel Lehr ("Lehr") entered the cell and began to cut off Plaintiff's shirt with safety scissors so that Plaintiff could be changed into a Ferguson gown. Ramirez Depo. at 49:4–9; Daly Decl. at ¶ 7. Lehr had cut halfway down Plaintiff's shirt when Plaintiff began to yell incoherently and violently resist. Plaintiff began to thrash his body, slam his head into the concrete floor, and kick his legs. Daly Decl. at ¶ 7; Ramirez Depo. at 51:6–13; ECF No. 72-7, at 40:23–41:6 ("Hudnall Depo."). Plaintiff states that he began to resist because the voices in his head told him that the officers were there to kill him. Carmona Depo. at 23:2–9.

4

### 4. Plaintiff is Removed from His Cell

Plaintiff ultimately calmed down and was escorted out of his cell and down the stairs in handcuffs. Anderson Decl. at ¶ 7; ECF No. 72-10 ("Cell Extraction Video"). Plaintiff was then led to the downstairs dayroom area, at which point Plaintiff began to kick officers and attempt to struggle out of their control. ECF No. 72-10 ("Dayroom Video"). Plaintiff was ultimately sedated by medical personnel and transported to San Mateo Medical Center to have surgery on his left arm. Carmona Depo. at 82:1–7.

### B. Procedural Background

On August 27, 2018, Plaintiff filed a pro se complaint against San Mateo County Sheriff Officers Does 1-99. ECF No. 1 at 1. On November 29, 2018, the Court granted Plaintiff leave to proceed in forma pauperis, ECF No. 13, but dismissed the complaint with leave to amend because Plaintiff failed to name an appropriate defendant for service. ECF No. 12.

Plaintiff obtained counsel, who entered an appearance on December 12, 2018. ECF No. 14. On December 27, 2018, Plaintiff filed a First Amended Complaint against Sheriff Bolanos, the County of San Mateo, and Doe Defendants. ECF No. 15 ("FAC"). The FAC alleged six causes of action: (1) violation of the Fourth and Fourteenth Amendments of the United States Constitution; (2) intentional infliction of emotional distress; (3) assault and battery; (4) negligence; (5) a *Monell* claim; and (6) violation of the Bane Act. *Id.* at ¶¶ 26–52. Plaintiff asserted his fifth cause of action (the *Monell* claim) against all Defendants, but asserted his remaining causes of action against only Doe Defendants. *Id.*

On February 27, 2019, Defendants filed a motion to dismiss Plaintiff's fifth cause of action (the *Monell* claim). ECF No. 20. On March 13, 2019, Plaintiff filed an opposition. ECF No. 22. On March 19, 2019, Defendants filed a reply. ECF No. 23. On May 23, 2019, the Court held that "the allegations regarding the purported policies of San Mateo County are unsupported by any factual pleadings." ECF No. 27 at 6. The Court dismissed the *Monell* claim against the County of San Mateo with leave to amend. *Id.* at 6–7.

The Court also dismissed with prejudice the *Monell* claim against Sheriff Bolanos and Doe

United States District Court
Northern District of California

Defendants in their official capacities because Plaintiff's claims against these defendants in their

official capacity were "subsumed by Plaintiff's *Monell* claim under § 1983 against San Mateo

County, the governmental employer." *Id.* at 7, 9–10.  Finally, the Court dismissed Plaintiff's

*Monell* claim against Sheriff Bolanos and Doe Defendants in their individual capacity without

prejudice because the allegations were "[t]hreadbare recitations of the elements of a cause of

action, supported by mere conclusory statements." *Id.* at 8, 10–11.  The Court directed Plaintiff to

file an amended complaint within 30 days curing the identified deficiencies and prohibited

Plaintiff from adding new causes of actions or parties without leave of the Court or stipulation of

the parties. *Id.* at 11.

On June 24, 2019, Plaintiff filed a Second Amended Complaint.  ECF No. 28 ("SAC").

The SAC only included one additional allegation not contained in the FAC.  Plaintiff alleged that

"[o]n information and belief, Defendant BOLANOS participated in the violent assault of

Plaintiff." *Id.* at ¶ 15.  At the same time, the SAC continued to allege that Plaintiff could not

recognize or identify any of the deputies who allegedly attacked him.  SAC at ¶¶ 11–19.  The SAC

also added Sheriff Bolanos as a defendant to the remaining five causes of action.  The County,

Sheriff Bolanos, and Doe Defendants remained as defendants as to the *Monell* claim, the fifth

cause of action.

On July 1, 2019, Defendants filed a motion to dismiss Plaintiff's *Monell* claim as to all

Defendants and the remaining five causes of action as to Sheriff Bolanos.  ECF No. 29.  On July

15, 2019, Plaintiff filed an opposition.  ECF No. 30.  On July 22, 2019, Defendants filed a reply.

ECF No. 31.

On September 12, 2019, the Court granted in part and denied in part Defendants' motion to

dismiss.  ECF No. 33.  Specifically, the Court granted Defendants' motion to dismiss with

prejudice as to Plaintiff's *Monell* claim under Section 1983 against the County, Sheriff Bolanos,

and Doe Defendants.  *Id.* at 10.  The Court denied the motion to dismiss with respect to Plaintiff's

Fourth Amendment and Fourteenth Amendment claim under Section 1983 as to Sheriff Bolanos;

Plaintiff's intentional infliction of emotional distress claim as to Sheriff Bolanos; Plaintiff's assault and battery claim as to Sheriff Bolanos; Plaintiff's negligence claim against Sheriff Bolanos; and Plaintiff's Bane Act claim against Sheriff Bolanos.  *Id.*

On September 26, 2019, Defendants filed an answer to Plaintiff's SAC.  ECF No. 34.  On November 27, 2019, the Court granted the parties' stipulation to allow Plaintiff to file a third amended complaint and to dismiss Defendant Bolanos.  ECF No. 37.

On December 2, 2019, Plaintiff filed a Third Amended Complaint.  ECF No. 38 ("TAC").  The TAC alleges five causes of action: (1) violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983; (2) intentional infliction of emotional distress; (3) assault and battery; (4) negligence; (5) violation of California Civil Code § 52.1 ("Bane Act").  *Id.* at ¶¶ 36–55.  Plaintiff named as Defendants Correctional Officer Jesse Ramirez, Correctional Officer Walter Daly, Correctional Officer Derek Hudnall, Correctional Officer James Byrnes,  Correctional Officer Ryan Cardoza, Correctional Officer Berta Garcia, Correctional Officer John Ray Guinto, Correctional Officer Daniel Diaz, Correctional Officer David Dominguez, Deputy Samuel Lehr, Deputy Michael Anderson, Deputy William Robinson, and the County of San Mateo.  *Id.*

On February 6, 2020, Defendants filed an answer to Plaintiff's TAC.  ECF No. 47.

On April 6, 2020, the Court granted the parties' stipulation to stay the case, and the Court referred the parties to a settlement conference with United States Magistrate Judge Nathanael Cousins.  ECF No. 52.

On July 7, 2020, the Court granted Plaintiff's motion to appoint Maria Isabel Tapia Carmona as Plaintiff's guardian ad litem.  ECF No. 60.

On November 3, 2020, the Court lifted the stay of the case. ECF No. 69.

On March 12, 2021, Defendants filed the instant motion for summary judgment.[2]  ECF No.

---

[2] On March 12, 2021, Defendants also filed a motion to exclude the expert opinions and testimony of Ernest Burwell ("Burwell").  ECF No. 73.  On March 26, 2021, Plaintiff filed an opposition. ECF No. 76.  On April 2, 2021, Defendants filed a reply.  ECF No. 79.  Burwell is Plaintiff's use of force expert and authored Plaintiff's use of force expert report.  Plaintiff does not rely on, or mention, this use of force report in opposition to Defendants' motion for summary judgment.

7

Case No. 18-CV-05232-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

72 ("Mot."). On March 25, 2021, Plaintiff filed an opposition. ECF No. 75 ("Opp."). On April 2, 2021, Defendants filed a reply. ECF No. 78 ("Reply").

### C. Request for Judicial Notice

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, courts may consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Here, Defendants request judicial notice of a court record from the Superior Court of the County of San Mateo. ECF No. 72-1 (Request for Judicial Notice); ECF No. 72-2 ("Ex. M"). Plaintiff does not oppose this request. Court records or proceedings in other cases are matters of public record, and therefore the proper subject of judicial notice. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of records in another court). Accordingly, the Court GRANTS Defendants' request for judicial notice.

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of

---

Similarly, the Court does not rely on Plaintiff's use of force expert report in ruling on Defendants' motion for summary judgment. Therefore, Defendants' motion to exclude will be addressed in a separate order.

Case No. 18-CV-05232-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## III.    DISCUSSION

Plaintiff's TAC alleges four causes of action against Defendants Ramirez, Daly, Hudnall, Byrnes, Cardoza, Garcia, Guinto, Diaz, Dominguez, Lehr, Anderson, and Robinson: (1) violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983; (2) intentional infliction of emotional distress; (3) assault and battery; and (4) violation of the Bane Act. TAC at ¶¶ 36–45, 50–55. Plaintiff alleges a fifth cause of action for negligence against Defendants Ramirez, Daly, Hudnall, Byrnes, Cardoza, Garcia, Guinto, Diaz, Dominguez, Lehr, Anderson, Robinson, and the County of San Mateo. *Id.* at ¶¶ 46–49.

United States District Court
Northern District of California

Defendants argue that they are entitled to summary judgment in their favor on Plaintiff's Section 1983 claim because undisputed facts show that Defendants did not violate Plaintiff's Fourth and Fourteenth Amendment rights by use of excessive force.  Mot. at 1  Defendants further argue that they are entitled to qualified immunity on Plaintiff's Section 1983 claim.  *Id.* Defendants next argue that they are entitled to summary judgment on Plaintiff's intentional infliction of emotional distress, assault and battery, negligence, and Bane Act claims ("state law claims") because Defendants acted with objectively reasonable force.  *Id.*  Finally, Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  *Id.*  Plaintiff argues in opposition that disputes of material fact between the parties mean that summary judgment in Defendants' favor is inappropriate at this stage.  Opp. at 1.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "To determine whether a government official is entitled to qualified immunity, we ask two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct."  *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).  The Court may exercise its discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

The Court therefore begins by addressing Plaintiff's Section 1983 claim and Defendants' affirmative defense of qualified immunity.  The Court then addresses Plaintiff's state law claims.

**A. Plaintiff's Section 1983 Claim for Excessive Force in Violation of the Fourth and Fourteenth Amendments**

Plaintiff first alleges that Defendants violated his Fourth and Fourteenth Amendment rights through the use of excessive force, and Defendants are therefore liable under 42 U.S.C. § 1983. TAC at ¶¶ 36–40.  Defendants argue that they are entitled to summary judgment because no

reasonable jury could find that they used excessive force in detaining Plaintiff. Mot. at 7. Defendants further argue that they are entitled to qualified immunity. *Id.* at 15.

Below, the Court considers (1) which Defendants and what conduct is properly before the Court; (2) the Fourth Amendment balancing test under Plaintiff's Section 1983 claim; and (3) whether Defendants are entitled to qualified immunity because the constitutional right was not clearly established.

**1. Whether there has been a Violation of a Constitutional Right**

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). In order to sustain a cause of action under Section 1983, a plaintiff must show (1) that he suffered a violation of his rights protected by the United States Constitution or created by federal statute, and (2) that the violation of his rights was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (outlining elements of a Section 1983 claim). A plaintiff meets the causation element of a Section 1983 claim only if a plaintiff establishes that a defendant undertook an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was required to do by law. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (explaining elements of a Section 1983 claim).

The parties do not dispute that Defendants were acting under color of state law. The question before the Court is therefore whether Defendants are entitled to summary judgment because there is no dispute of material fact that Defendants did not use excessive force, or, even if there is, whether Defendants are entitled to qualified immunity.

The Due Process Clause of the Fourteenth Amendment protects pretrial inmates from the use of excessive force by officers. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (holding that the Due Process clause applies to pretrial detainees). To determine whether an officer has violated a pretrial detainee's constitutional rights by using excessive force, the Court

Case No. 18-CV-05232-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

considers whether the use of force violated the objective reasonableness standard set forth by the Fourth Amendment. *Id.* (explaining "that the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one."); *see also Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003) ("The Fourth Amendment sets the applicable constitutional limitations for considering claims of excessive force during pretrial detention.").

In *Graham v. Connor*, the United States Supreme Court explained that analyzing what force was "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). To do this, the Court weighs non-exclusive factors that include: (1) "the severity of the crime at issue," (2) "whether [Plaintiff] poses an immediate threat to the safety of the officers or others," and (3) "whether [Plaintiff] is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Court considers the reasonableness of the force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" because "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397.

Furthermore, the Ninth Circuit has made clear that "[b]ecause the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (cleaned up) (internal quotation marks omitted).

### a. Defendants' Conduct at Issue Before the Court

First, the Court must clarify which Defendants and what conduct is properly before the Court on the motion for summary judgement. Plaintiff's TAC alleges that Officers Ramirez, Daly, Hudnall, Byrnes, Cardoza, Garcia, Guinto, Diaz, Dominguez, Lehr, Anderson, and Robinson

violated Plaintiff's Fourth and Fourteenth Amendment rights in violation of Section 1983. TAC at ¶ 36–40. Specifically, Plaintiff's TAC alleges that Defendants broke Plaintiff's arm inside of Plaintiff's cell; punched and slapped Plaintiff inside Plaintiff's cell; and continued to assault Plaintiff outside of Plaintiff's cell. *Id.* at ¶ 25, 29.

Defendants' motion for summary judgment argues that the record in this case clearly establishes that only Ramirez, Daly, and Hudnall initially entered Plaintiff's cell to handcuff Plaintiff. Mot. at 8. Furthermore, Defendants argue that the record in this case clearly establishes that Defendants did not assault or otherwise use excessive force outside of Plaintiff's cell. *Id.* at 9. Finally, Defendants argue that although Plaintiff testified that Cardoza punched and slapped Plaintiff inside of Plaintiff's cell while Plaintiff was being handcuffed by Defendants, the record establishes that Cardoza did not enter Plaintiff's cell at this time. *Id.* at 8. Rather, it was Ramirez, Daly, and Hudnall who initially entered Plaintiff's cell and restrained Plaintiff. *Id.* Defendants further argue that the record clearly establishes that Defendants did not otherwise punch or slap Plaintiff inside of Plaintiff's cell. *Id.* at 9.

Accordingly, Defendants argue that the only conduct that is properly before the Court with respect to both Plaintiff's Section 1983 claim and state law claims is Ramirez, Daly, and Hudnall's use of force that allegedly resulted in Plaintiff's broken arm. Reply at 2; Mot. at 14. The Court agrees.

First, Plaintiff's opposition brief argues only that Ramirez, Daly, and Hudnall used excessive force against Plaintiff by breaking Plaintiff's arm inside of Plaintiff's cell. *See* Opp. at 6 ("Defendants Ramirez, Daly, and Hudnall are liable either because they broke Plaintiff's arm or failed to intervene before Plaintiff's arm was broken."). Moreover, Plaintiff's own factual background section in the opposition brief omits entirely any discussion of conduct that occurred outside of Plaintiff's cell. *See* Opp. at 4. "A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir.

United States District Court
Northern District of California

2009) (affirming district court's grant of summary judgment on claims that plaintiff failed to defend). Thus, Plaintiff has abandoned his excessive use of force claim and state law claims with respect to allegations that Defendants used excessive or objectively unreasonable force against Plaintiff by punching or slapping Plaintiff outside of Plaintiff's cell.

Second, although Plaintiff's factual background section mentions that Defendants punched and slapped Plaintiff inside of Plaintiff's cell, Plaintiff fails to address any of Defendants' arguments for why the record makes clear that Defendants did not punch or slap Plaintiff inside of Plaintiff's cell. Moreover, although Plaintiff testified that Cardoza punched and slapped Plaintiff inside of Plaintiff's cell after Defendants entered to handcuff Plaintiff, Carmona Depo. at 64:17, Plaintiff's own factual background section in the opposition brief does not mention Cardoza and states only that "Defendants Ramirez, Daly, and Hudnall entered Plaintiff's cell." Opp. at 3.

Furthermore, in the merits section of Plaintiff's opposition brief, Plaintiff argues only that "Defendants Ramirez, Daly, and Hudnall are liable either because they broke Plaintiff's arm or failed to intervene before Plaintiff's arm was broken." Opp. at 6. Plaintiff does not argue that any Defendant is liable for punching or slapping Plaintiff. Accordingly, Plaintiff has abandoned his excessive use of force claim and state law claims with respect to allegations that Defendants used excessive or objectively unreasonable force against Plaintiff by punching or slapping Plaintiff inside of Plaintiff's cell. *See Ramirez*, 560 F.3d at 1026 (affirming district court's grant of summary judgment on claims that plaintiff failed to defend).

Finally, Plaintiff's opposition brief does not mention Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Dominguez, or Robinson. Plaintiff's opposition brief also does not argue that Anderson or Lehr used excessive force against Plaintiff or otherwise had any contact with Plaintiff. Accordingly, the Court finds that Plaintiff has abandoned each of his claims with respect to Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson. *See Ramirez*, 560 F.3d at 1026 ("A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue

14

from the case.").

Accordingly, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's Section 1983 claim as to Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson.

As such, the Court considers only Plaintiff's argument that Ramirez, Daly, and Hudnall ("Excessive Force Defendants") used excessive force when they broke Plaintiff's arm in Plaintiff's cell while Plaintiff was being handcuffed and changed into a Ferguson gown.

Having identified what conduct is properly before the Court on the motion for summary judgment, the Court now proceeds to balance the nature and quality of the intrusion on Plaintiff's Fourth Amendment rights with the government's countervailing interest in the use of force.

### b. The Nature and Quality of the Intrusion

First, the Court considers the nature and quality of the intrusion on Plaintiff's Fourth Amendment rights. *Graham*, 490 U.S. at 396 (outlining the elements of an excessive use of force claim).

According to Defendants' portrayal of events, Daly, Ramirez, and Hudnall entered Plaintiff's cell. Hudnall grabbed Plaintiff's legs, Ramirez grabbed Plaintiff's left arm and placed it in a control hold, and Daly grabbed Plaintiff's left arm and placed it in a control hold. Ramirez Depo. at 50:1–12; Daly Dec. at ¶ 5. The officers then flipped Plaintiff onto his stomach and Daly applied a shoulder pin, which is a "standard arm bar control hold while applying pressure by using leverage to the shoulder." Daly Dec. at ¶ 5. Daly and Ramirez then handcuffed Plaintiff. Daly Depo. at 41:19–23; Ramirez Depo. at 50:20–23. Plaintiff offered minimal, if any, resistance during the process of handcuffing him. Daly Dec. at ¶ 6. Plaintiff then began to violently resist when Lehr subsequently entered the cell and began to cut open Plaintiff's shirt in order to change Plaintiff into a Ferguson gown. Ramirez Depo. at 49:4–9; 51:6–13. Plaintiff eventually calmed down and was led out of his cell. At some point during this process, Daly and Ramirez noticed that Plaintiff's left armed appeared to be injured. Daly Depo. at 44:1–21.

According to Plaintiff, Daly broke Plaintiff's arm at some point during the process of handcuffing Plaintiff and extracting Plaintiff from the cell.  Opp. at 8.  Plaintiff testified that he asked the officer holding his arm to please stop twisting his arm because it was painful.  Carmona Depo. at 50:16–18.  Plaintiff further testified that the officer then "exerted more pressure into my arm, and that's when my arm broke."  *Id.* at 50:19–20.

Plaintiff does not dispute that Daly used a standard control hold on Plaintiff's left arm in order to handcuff Plaintiff.  However, Plaintiff argues that Daly exerted more pressure into Plaintiff's arm after Plaintiff complained of the pain, and that Daly's use of force must have been excessive because it resulted in Plaintiff's broken arm.  Opp. at 6, 8.  Plaintiff also argues that Daly admitted that a control hold can be applied incorrectly and cause injury.  Opp. at 3 (citing Daly Depo. at 37:20–21; 40:21–22).

### c.  The Government's Countervailing Interest in the Use of Force

"The strength of the government's interest in the force used is evaluated by examining three primary factors: (1) 'whether [Plaintiff] poses an immediate threat to the safety of the officers or others,' (2) 'the severity of the crime at issue,' and (3) 'whether [Plaintiff] is actively resisting arrest or attempting to evade arrest by flight.'"  *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011) (quoting *Graham*, 490 U.S. at 396).  Moreover, the Court may also consider additional factors, including "the availability of less intrusive alternatives to the force employed, whether proper warnings were given, and whether it should have been apparent to officers that the person they used force against was emotionally disturbed."  *Id.*

Defendants argue that each of these factors weigh in favor of Excessive Force Defendants.  First, Defendants argue that Excessive Force Defendants feared for both their own safety and Plaintiff's safety.  Mot. at 11.  According to Defendants' portrayal of events, Plaintiff was unresponsive and uncooperative when Excessive Force Defendants informed him that he had to be changed into a Ferguson Gown and moved to another cell.  *Id.* at 12.  Moreover, Plaintiff had been acting in an odd and unpredictable fashion and had been classified as a moderate suicide risk by

Forensic Mental Health staff. *Id.* at 11.

Second, Defendants argue that Plaintiff had been booked into Maguire on a charge for attempted murder and other serious felonies less than 48 hours before the events in Plaintiff's cell. *Id.* at 10. Accordingly, Defendants argue that Plaintiff had committed serious and violent crimes prior to the incident in question. *Id.*

Third, Defendants argue that Plaintiff actively resisted Excessive Force Defendants' attempt to control Plaintiff inside of Plaintiff's cell. Mot. at 12. Specifically, Hudnall testified that Plaintiff started to "violently resist," and "rock his body, almost like a fish, like a fish will swim in the water, like violently to the point where I've never seen—I had never seen anything." Hudnall Depo. at 41:1–6. Daly testified that "[d]uring our attempts to try and control Inmate Tapia Carmona by using control holds and place him into handcuffs, he was violently thrashing his body throughout the cell…" Daly Depo. at 45:13–16. Finally, Defendants argue that Plaintiff ignored multiple warnings in Spanish from Ramirez before Excessive Force Defendants entered Plaintiff's cell. Mot. at 12 (citing Carmona Depo. at 50:5–9).

In opposition, Plaintiff argues that he did not pose an immediate threat to officers when they entered his cell because Plaintiff was sitting on the ground and brushing his teeth when Excessive Force Defendants entered. Opp. at 7. Plaintiff further argues that he did not pose a flight risk because he was already in custody and held inside a cell. *Id.* Finally, Plaintiff argues that he was not actively resisting when Daly twisted Plaintiffs' arm and broke it after Daly exerted more pressure after Plaintiff complained of the pain. *Id.* at 8.

### d. Totality of the Evidence

Viewing the totality of the evidence in the light most favorable to Plaintiff, the Court finds that there are disputes of material fact regarding Excessive Force Defendants' use of force and the circumstances surrounding that use of force that preclude summary judgment on Plaintiff's Section 1983 claim for excessive use of force. *See Glenn*, 673 F.3d at 872 (explaining various factors that courts must balance when determining whether defendants used excessive force).

Case No. 18-CV-05232-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Specifically, the record is unclear as to when Plaintiff's arm was broken and the circumstances that led to it breaking. Plaintiff alleges that his arm was broken before he began to resist. Opp. at 8. Defendants, by contrast, suggest that Plaintiff's arm broke after he began to violently resist and fight to get away from Excessive Force Defendants. Reply at 3, 5. Furthermore, Plaintiff argues that Daly broke his arm by exerting further force after Plaintiff complained that his arm was in pain. Opp. at 8. Defendants argue that Plaintiff never complained that his arm was in pain or made any comment to Excessive Force Defendants while they handcuffed Plaintiff in Plaintiff's cell. Reply at 1.

Plaintiff's version of events therefore differs from Defendants' version of events in several material respects. Considering the totality of the circumstances and drawing all inferences in Plaintiff's favor, there is a genuine issue of material fact as to whether Excessive Force Defendants' use of force was objectively reasonable, and in turn, whether each officer's use of force violated Plaintiff's Fourth Amendment right as a matter of law. *See City of Hemet*, 394 F.3d at 701 (reminding courts that "[b]ecause the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.").

Having found a genuine dispute of material fact as to the first question in the qualified immunity analysis, the Court now turns to the second question in the qualified immunity analysis.

### 2. Whether the Right was Clearly Established at the Time of the Alleged Misconduct

As for the second question in the qualified immunity analysis, officers are entitled to qualified immunity where their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (citation omitted). "For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."

*Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). Put slightly differently, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Defendants argue that Excessive Force Defendants are entitled to qualified immunity because "there was no controlling precedent at the time of this incident in March 2018 to establish the use of force under the circumstances violated the Fourth Amendment." Mot. at 15.

Here, the Court cannot resolve whether Excessive Force Defendants violated clearly established constitutional rights of which a reasonable person would have known. This is because whether Excessive Force Defendants violated a clearly established constitutional right turns on facts such as (1) whether Plaintiff's arm was broken by Excessive Force Defendants before Plaintiff began to resist, and (2) whether Plaintiff's arm was broken in response to Plaintiff's complaint that he was in pain. The Court has already found a genuine material dispute as to those facts. Accordingly, the Court concludes there is a genuine material dispute as to the second question in the qualified immunity analysis.

In sum, the Court finds there is a genuine dispute of material fact as to whether Excessive Force Defendants violated Plaintiff's Fourth Amendment right as a matter of law and whether Excessive Force Defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. Thus, at summary judgment, the Court cannot conclude that Excessive Force Defendants are entitled to qualified immunity. Accordingly, the Court DENIES Defendants' motion for summary judgment on Plaintiff's Section 1983 claim for excessive force as to Excessive Force Defendants.

### B. State Law Claims

Defendants next argue that they are entitled to summary judgment on Plaintiff's state law claims. Plaintiff alleges state law claims for intentional infliction of emotion distress, assault and battery, negligence, and violation of the Bane Act. TAC at ¶ 41–55. Defendants argue that they are entitled to summary judgment on each of these claims. Mot. at 16. Alternatively, Defendants

19

argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *Id.* at 17. The Court first addresses the Court's jurisdiction over Plaintiff's state law claims. The Court then turns to whether Defendants are entitled to summary judgment on Plaintiff's state law claims.

### 1. Supplemental Jurisdiction

Plaintiff's Section 1983 claim is the only claim in this case over which the Court has original jurisdiction. Defendants therefore argue that if the Court grants summary judgment in Defendants' favor on Plaintiff's Section 1983 claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Mot. at 17. However, the Court has denied Defendants' motion for summary judgment on Plaintiff's Section 1983 claim. Therefore, Defendants' argument regarding the Court's supplemental jurisdiction over Plaintiff's state law claims is moot.

### 2. Plaintiff's Intentional Infliction of Emotional Distress Claim

Defendants argue that the Court should grant summary judgment on Plaintiff's claim for intentional infliction of emotional distress because Plaintiff has failed to establish a Fourth Amendment violation. Mot. at 16.

First, the Court has already found that Plaintiff failed to provide any evidence that Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson used excessive force against Plaintiff or otherwise had any contact with Plaintiff. *See supra* Section III(A)(1)(a). Accordingly, Plaintiff abandoned his intentional infliction of emotional distress claim with respect to Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson. *Id.* The Court therefore GRANTS summary judgment on Plaintiff's intentional infliction of emotion distress claim as to Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson.

Second, the Court has already found that disputed issues of fact preclude a finding that Excessive Force Defendants did not use excessive force in violation of the Fourth Amendment.

As such, Defendants' argument regarding Plaintiff's intentional infliction of emotional distress claim fails and the Court DENIES Defendants' motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim as to Excessive Force Defendants.

### 3. Plaintiff's Assault and Battery Claim

Defendants next argue that the Court should grant summary judgment on Plaintiff's claim for assault and battery because that claim is subject to the same objective reasonableness analysis as excessive force claims under the Fourth Amendment. Mot. at 17.

First, the Court has already found that Plaintiff failed to provide any evidence that Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson used excessive force against Plaintiff or otherwise had any contact with Plaintiff. *See supra* Section III(A)(1)(a). Accordingly, Plaintiff abandoned his assault and battery claim with respect to Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson. *Id.* The Court therefore GRANTS summary judgment on Plaintiff's assault and battery claim as to Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson.

Second, the Court has already found that disputed issues of fact preclude a finding that Excessive Force Defendants did not use excessive force. As such, Defendants' argument regarding Plaintiff's assault and battery claim fails and the Court DENIES Defendants' motion for summary judgment on Plaintiff's assault and battery claim as to Excessive Force Defendants.

### 4. Plaintiff's Bane Act Claim

Defendants next argue that the Court should grant summary judgment on Plaintiff's Bane Act claim because that claim is subject to the same objective reasonableness analysis as excessive force claims under the Fourth Amendment. Mot. at 17.

First, the Court has already found that Plaintiff failed to provide any evidence that Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson used excessive force against Plaintiff or otherwise had any contact with Plaintiff. *See supra* Section III(A)(1)(a). Accordingly, Plaintiff abandoned his Bane Act claim with respect to

1    Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson.

2    *Id.* The Court therefore GRANTS summary judgment on Plaintiff's Bane Act claim as to

3    Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson.

4        Second, the Court has already found that disputed issues of fact preclude a finding that

5    Excessive Force Defendants did not use excessive force. Defendants next argue that the Court

6    should grant summary judgment on Plaintiff's Bane Act claim because a claim under the Bane Act

7    requires Plaintiff to establish that Defendants had specific intent to violate Plaintiff's

8    constitutional rights and Plaintiff has failed to provide any evidence of Defendants' specific intent.

9    Mot. at 16–17.

10        The Ninth Circuit has recognized that a claim under "the Bane Act requires a specific

11    intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese*, 888 F.3d at

12    1043 (internal quotation marks omitted). Thus, a claim under the Bane Act predicated on a

13    Section 1983 claim for excessive force "require[s] some showing of intent in addition to showing

14    the constitutional violation." *Id.* at 1044; *see also Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520

15    (9th Cir. 2018) (holding that a Bane Act claim requires the court to ask "did the defendant commit

16    the act in question with the particular purpose of depriving the citizen victim of his enjoyment of

17    the interests protected by that [protected] right?") (internal quotation marks omitted)).

18        Plaintiff has failed to respond to Defendants' argument that the Court should grant

19    summary judgment on Plaintiff's Bane Act claim for failure to provide evidence that Excessive

20    Force Defendants acted with specific intent to violate Plaintiff's constitutional rights. Moreover,

21    Plaintiff's opposition brief fails to point to any evidence that Excessive Force Defendants acted

22    with specific intent to use excessive force in violation of Plaintiff's constitutional rights. Finally,

23    Plaintiff's TAC fails to allege that Excessive Force Defendants acted with specific intent to violate

24    Plaintiff's constitutional rights. *See* TAC at ¶ 50–55.

25        Accordingly, the Court GRANTS Defendants' motion for summary judgment on

26    Plaintiff's Bane Act claim as to Excessive Force Defendants.

27

28    Case No. 18-CV-05232-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

### 5. Plaintiff's Negligence Claim

Finally, Defendants argue that the Court should grant summary judgment on Plaintiff's negligence claim because Excessive Force Defendants' use of force was reasonable under the totality of the circumstances. Mot. at 17. Plaintiff argues that a reasonable jury could find that Excessive Force Defendants did not use reasonable force under the totality of the circumstances, and that disputed issues of material fact preclude summary judgment in Defendants' favor. Opp. at 10.

First, the Court has already found that Plaintiff failed to provide any evidence that Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson used excessive force against Plaintiff or otherwise had any contact with Plaintiff. *See supra* Section III(A)(1)(a). Accordingly, Plaintiff abandoned his negligence claim with respect to Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson. The Court therefore GRANTS summary judgment on Plaintiff's negligence claim as to Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson.

Second, the Court has already found that disputed issues of fact preclude a finding that Excessive Force Defendants' use of force was reasonable under the totality of the circumstances. The Court therefore DENIES Defendants' motion for summary judgment on Plaintiff's negligence claim as to Excessive Force Defendants and the County of San Mateo.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to the following:

- Plaintiff's Section 1983 claim for excessive force as to Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson;

- Plaintiff's Bane Act claim as to all Defendants; and

- Plaintiff's claims for assault and battery, intentional infliction of emotion distress, and negligence against Defendants Byrnes, Garcia, Cardoza, Guinto, Diaz, Lehr, Dominguez, Anderson, and Robinson.

23

For the foregoing reasons, Defendants' motion for summary judgment is DENIED as to the following:

- Plaintiff's Section 1983 claim for excessive force against Defendants Ramirez, Daly, and Hudnall;

- Plaintiff's claims for assault and battery and intentional infliction of emotion distress against Defendants Ramirez, Daly, and Hudnall; and

- Plaintiff's negligence claim against Defendants Ramirez, Daly, Hudnall, and the County of San Mateo.

**IT IS SO ORDERED.**

Dated: July 2, 2021

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 18-CV-05232-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT